## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

|  |  |
|---|---|
| YALANDA RANDOLPH, | **Case No.:** |
| Plaintiff, |  |
| v. | **COMPLAINT AND** |
|  | **DEMAND FOR JURY TRIAL** |
| EXPERIAN INFORMATION SOLUTIONS, INC., |  |
|  | 1.  **FCRA, 15 U.S.C. § 1681** *et seq.* |
| Defendant. |  |

NOW COMES, Plaintiff Yalanda Randolph, ("Plaintiff" or "Ms. Randolph") by counsel, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Experian Information Solutions, Inc. ("Experian" or "Defendant").

## <u>INTRODUCTION</u>

1.     Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendant.  Plaintiff contends Defendant failed to follow reasonable procedures to assure maximum

possible accuracy in the preparation of Plaintiff's consumer report, and consequently reported inaccurate information about Plaintiff.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.      Venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

4.      Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5.      Plaintiff is a natural person who resides in the city of Newnan, Coweta County, Georgia.

6.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

2

7.     Defendant Experian is a *consumer reporting agency*, as defined in 15 U.S.C. § 1681a(f)).  On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8.     During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Georgia and conducted business in the State of Georgia on a routine and systematic basis.

9.     Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency," as defined by 15 U.S.C. §1681a(f) of the FCRA.

10.    During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

3

11.   Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## RELEVANT FACTUAL BACKGROUND

12.   Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

13.   Defendant, one of the three major credit reporting agencies ("CRAs") in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

14.   Defendant's credit reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications

for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

15.     Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant, and other information must be independently gathered by Defendant, or acquired from third party providers/vendors or repositories, like computerized reporting services like PACER.

16.     The information Defendant includes in a credit report contributes to a consumer's overall creditworthiness and determines their FICO Score(s).

17.     The majority of institutions that offer financial services (e.g., banks, creditors, lender) rely upon credit reports from CRAs (like Defendant) to make lending decisions. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), to interpret the information in a consumer's credit report.

18.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's credit report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

19.    FICO Scores factor the following credit report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a.    "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

    b.    The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

20.    Defendant regularly obtains and reports consumer bankruptcy information in consumer credit reports.

21.    Defendant is also notified of consumer bankruptcies by furnishers of information.

22.     Defendant knows that a Discharge Order in a Chapter 7 Bankruptcy means that all statutorily dischargeable debts, other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding, are discharged.

23.     Information indicating that a specific debt has not been discharged, but instead was reaffirmed or successfully challenged through an adversary proceeding, is retrieved from the same sources from which Defendant **voluntarily** obtains consumer bankruptcy case information.

24.     Defendant also receives information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

25.     However, Defendant regularly reports inaccurate information about consumers' debts after they receive a Discharge Order.

26.     Rather than follow reasonable procedures to assure maximum possible accuracy, as it is required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

27.     Defendant regularly publishes consumer information that conflicts with the information provided by data furnishers, included in Defendant's credit

files, contained in public records that Defendant regularly accesses, and/or sourced through Defendant's independent and voluntary efforts.

28.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate credit reporting following a Chapter 7 discharge.

29.     Therefore, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures, which often produce inaccurate balances, account, and payment statuses.

30.     Plaintiff filed a "no asset" Chapter 7 Bankruptcy on or about March 12, 2020 in the United States Bankruptcy Court for the Northern District of Georgia, case no. 20-64457-lrc.

31.     There were no objections during Plaintiff's Chapter 7 Bankruptcy, or proceedings to declare any debt "non-dischargeable" pursuant to 11 U.S.C. § 523 *et seq*.

32.     Accordingly, Plaintiff received an Order of Discharge on or about July 21, 2020.

33.     Thereafter, Plaintiff was not personally liable for her dischargeable debts.

34.   Upon information and belief, Defendant prepared one or more credit reports concerning Plaintiff after she was discharged from Chapter 7 Bankruptcy.

35.   In Plaintiff's credit reports, Defendant included her bankruptcy reference number, court, filing date, and Plaintiff's bankruptcy discharge date.

36.   Defendant also reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

37.   Defendant reported Plaintiff's consumer bankruptcy information in the Public Records section and individual tradelines of her consumer credit reports.

38.   Defendant received notice of Plaintiff's bankruptcy discharge through its independent collection of her consumer information through vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines featured on her credit reports.

39.   Defendant is aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," unless a furnisher provides information showing that a specific debt was excluded from the discharge.

40.     Defendant should have reported **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 Bankruptcy but did not.

41.      Defendant should have reported **all** of Plaintiff's dischargeable, pre-petition debts with a zero balance, but did not.

42.     Rather than accurately report the discharged debts, Defendant inaccurately reported Plaintiff's Suncoast Credit Union Account (the "Account"), starting with 293551XXXXX and opened in January 2005.

43.     The Account was included in Plaintiff's bankruptcy and discharged on or about July 21, 2020.

44.     However, Experian inaccurately reported the discharged Account with an outstanding Balance of $4,609, a "Past Due" Balance of $287 as of October 2020.

45.     Experian also inaccurately reported the Account's "Payment History" indicating that it was "past due" in March, May, June and July 2020 despite Plaintiff's bankruptcy petition being filed on March 12, 2020 and the accompanying bankruptcy stay that arose by law.

46.     Further, Experian reported the Account as "past due" in August, September and October 2020, despite the Account being included and discharged in Plaintiff's bankruptcy on July 21, 2020.

47.     Despite Plaintiff not making payments on the Account after filing for bankruptcy, Experian reported different balances in the months following Plaintiff's discharge in the "Balance Histories" section of the report. Experian indicated that the Account carried balances of: $5,611.00 in July 2020; $5,630.00 in August 2020; and $5,228 in September 2020.

48.     Experian also inexplicably updated the "Payment History" section on the Account in the months following Plaintiff's Discharge. Experian indicated that the Account was 60 days past due in August and September and 30 days late in October.

49.     Experian did not indicate that the Account was discharged in bankruptcy, despite reporting Plaintiff's bankruptcy in the public records section of her credit report and labeling other pre-bankruptcy accounts as "Discharged through Bankruptcy Chapter 7" with zero balances.

50.     Upon information and belief, Suncoast Credit Union ("Suncoast") furnished information to Defendant that indicated Plaintiff's debt was included or discharged in bankruptcy, but Defendant rejected or otherwise overrode the data it received.

51.     Notably, nonparties Equifax Information Services, LLC and Trans Union LLC did not inaccurately report the Account like Defendant.

52.     Upon information and belief, Defendant additionally and/or alternatively knew from past experiences that Suncoast furnished inaccurate information regarding discharged debts or, in the alternative, has historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 7 Bankruptcy is discharged.

53.     Alternatively, Defendant blindly relied on the information provided by Suncoast even though this information conflicted with information known by Defendant.

54.     Defendant's blind reliance on the furnisher, Suncoast, was unreasonable.

55.     Defendant's reliance on the furnisher, Suncoast is particularly egregious if Defendant knew from past experiences that Suncoast furnished inaccurate information regarding discharged debts or, in the alternative, has historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 7 Bankruptcy is discharged.

56.     In any event, Defendant knew or had reason to know that it reported information contradicted by its own records and knowledge of Plaintiff's Chapter 7 bankruptcy discharge.

57.     Defendant inaccurately reported that Plaintiff owed a balance that she did not actually owe, and also inaccurately reported the Account's status and payment history.

58.     Defendant inaccurately reported the Account with a balance owed after it was discharged in Chapter 7 Bankruptcy.

59.     Defendant failed to indicate that the Account had a zero-dollar balance and was discharged in Chapter 7 Bankruptcy.

60.     Defendant's reporting of the Account is patently inaccurate.

61.     If not patently inaccurate, Defendant's reporting of the Account is materially misleading.

62.     Upon information and belief, after Plaintiff's bankruptcy discharge, Plaintiff applied for an auto loan and was approved at less favorable terms due to Defendant's inaccurate reporting, which was reviewed by the creditor in its review of Plaintiff's credit application.

63.     Upon information and belief, after Plaintiff's bankruptcy discharge, Plaintiff applied for a personal loan and was denied due to Defendant's inaccurate reporting, which was reviewed by the creditor in its review of Plaintiff's credit application.

64.     As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

65.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## COUNT I
## Violations of the FCRA, 15 U.S.C. § 1681e(b)

66.     Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

67.     More than fifty years ago, the United States Congress determined that the banking system is dependent upon fair and accurate credit reporting.

68.     Congress recognized that inaccurate credit reports directly impair the efficiency of the banking system. Further, Congress noted that unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

69.     Congress knew that CRAs, like Defendant, play a vital role in assembling consumer information and evaluating consumer credit.

70.     Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.

14

71.    The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

72.    The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

73.    Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after a consumer receives a Discharge Order.

74.    Defendant's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

75.    Defendant's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

76.     Defendant's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

77.     Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records and its own files.

78.     Defendant's failure to maintain and employ reasonable procedures to assure the maximum accuracy of consumers' post-bankruptcy accounts is particularly egregious because the Defendant regularly and **voluntarily** searches for consumer bankruptcy information to include in credit files.

79.     Defendant knew or should have known it is obligated, by the FCRA, to maintain and employ reasonable procedures to assure it reports maximally accurate consumer credit information.

80.     Defendant knew or should have known it is obligated, by the FCRA, to update consumer credit reports and individual tradelines after receiving notice of a Chapter 7 Bankruptcy Discharge.

81.     Defendant knew or should have known that the effect of a Discharge Order in a no-asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

82.    CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving the Defendant.

83.    Therefore, Defendant had ample notice of its obligations under the FCRA and its continued use of unreasonable procedures.

84.    If Defendant contends it did not have sufficient notice, Defendant must justify its own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including where consumers file for Chapter 7 Bankruptcy.

85.    Defendant regularly conducts **voluntary** public records searches with the intention of including bankruptcy information on the credit reports it sells to other parties for a profit.

86.    The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

87.    In this case, Defendant sought out information about Plaintiff's bankruptcy filing and discharge and voluntarily reported it in her credit reports.

88.    When Defendant located and published Plaintiff's bankruptcy information, it had an obligation to ensure it reported her discharge and its effect(s) with maximal accuracy.

89.    Defendant willfully and consciously breached its duties as a CRA and deprived Plaintiff of her right to a fair and accurate credit report.

90.    Defendant violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure.

91.    Defendant possesses information from which Defendant should know the reported information is inaccurate, as Plaintiff's credit report includes: the date the consumer filed bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

92.    Defendant had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in her credit reports, including her bankruptcy case number, court, date of filing and date of discharge.

93.    Defendant is also on notice from other tradelines reported by Defendant that indicates Plaintiff's accounts were included in and discharged in bankruptcy.

94.    Defendant received notice of Plaintiff's bankruptcy discharge through public records, its own files, and information provided by data furnishers.

95.    Defendant knows that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date.

96.    Yet, in this case, Defendant inaccurately reported the Account, which predated Plaintiff's bankruptcy, with a balance owed during her bankruptcy stay and well after her discharge, with inaccurate (non-existent) amounts owed instead of reporting a $0 balance on account of Plaintiff's bankruptcy discharge.

97.    Defendant knew or should have known the information it reported about the Account was inaccurate.

98.    Defendant violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and by also failing to report accurate information when Defendant knew or should have known the information Defendant is reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

99.    Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

100.   Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

101.   Defendant's      inaccurate      reporting      damaged      Plaintiff's creditworthiness.

102.   Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Defendant's inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

103.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

104.   Defendant is a direct and proximate cause of Plaintiff's damages.

105.   Defendant is a substantial factor in Plaintiff's damages.

106.   Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendant for the following:

(a)     Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. §
        1681e(b);

(b)     An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or
        1681o(a)(1);

(c)     An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1)
        and 1681o(a)(1);

(d)     An award of punitive damages, as allowed by the Court pursuant to 15
        U.S.C. § 1681n(a)(2),

(e)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §
        1681n(a)(3) and § 1681o(a)(2); and

(f)     Such other and further relief as this Honorable Court may deem just
        and proper, including any applicable pre-judgment and post-judgment
        interest, and/or declaratory relief.

## **JURY DEMAND**

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 19th day of February 2021.

By: */s/Jenna Dakroub*
Jenna Dakroub
Bar Number: 385021
**PRICE LAW GROUP, APC**
8245 N. 85th Way
Scottsdale, AZ 85258
Telephone: (818) 600-5513
Fax: (818) 600-5413
E: jenna@pricelawgroup.com
*Attorney for Plaintiff*
*Yalanda Randolph*